Judge Buckner,
delivered the opinion of the court..
Anderson filed his bill in chancery, to cancel a deed made by R. Bibb, for land, to which thé complainant set up an equitable title; and if that could not be equitably done, to subject Pursley, to the payment of one half of a judgment, which had been recovered by Pursely against Campbell and Cravens, and which had been reversed by this court.
His bill exhibits, in substance, the following case.
R. Bibb had executed abend to Palmer, for the conveyance of four hundred acres of land, in Christian county. Palmer had assigned it, to the complainant and Henry K. Lewis.
Lewis, without the consent or knowledge of the complainant, contracted with Pursley, to sell to him 30Ó acres of said tract, at the price of $1800, to be paid as follows; $400, to he paid to Bibb, due by complainant and Lewis to him; an assignment of said judgment without recourse on Pursley, the assignor; and the ré-inainder in cash notes.' '
*259 Campbell and Cravens bad prayed an appeal from said judgment, which was, at the time of said contract, depending in this court. The common law papers, which are made exhibits in the bill, show that judgment had been reversed in the name of Hopson, for the benefit of Pursley, and was for $889 15 cents.
The complainant refused to ratify the contract, by assigning Bibb’s bond, unless Pursley would make'the assignment of the jndgment, in .such manner, as to be responsible; and so informed him; to which, he replied, that he did not doubt his success in the appeal, his lawyers having informed him, that it was a clear case in his favor.
He refused, however, to make the assignment, in the manner required, saying that his only objection was a solemn promise, made by him, never to assign any paper in that way. The complainant afterwards spoke to the lawyers referred to, and ascertained from them, that instead of such an opinion, they had told Pursley, they despaired of success.
He was then determined not to ratify said contract^ and never did assign the bond on Bibb, or perform any other act of ratification.
Not long afterwards, Lewis applied to complainant, and expressed a willingness to risk his half of the.judg-’ ment upon an assignment of it, without recourse, informing complainant, that Pursley would be bound to him for his half of it, and then- proposed to deliver to him, Anderson, one half of the cash notes, which he received, and they executed the following receipt.
“We hereby acknowledge the receipt of $1800, to ■ us, in hand paid, by John Pursley, it being for 300 acres of land, that we bought of Drury Palmer, where the widow Williams now lives, being the South end of a tract, that was. patented to Richard Bibb, sen. and to begin, at the beginning corner, to run off, three hundred acres, so as to leave both ends, in a good shape. '
H. K. LEWIS.”
September 10th, 1817. J.'C. ANDERSON.”
Pursley, on application, refused to secure complainant as to his half of the judgment, by assigning it, for value received, remarking that he had the joint receipt *260 oí' Anderson and Lewis for the purchase money. Upon, an inspection of the assignment, complainant ascertained that it had been made to Lewis alone; and upon inquiry found, that Lewis and Pursley combining to defraud him, bad presented Eibb’s bond to him, which had been kept by Lewis, and had procured a conveyance of said three hundred acres to Pursley, upon assurances made to Bibb, by Lewis, that complainant desired, and had directed it, to be so made.
The complainant, thereupon, filed his bill in chancery, charging these facts, and making Bibb, Pursley, Lewis and Palmer, defendants, fo procure a cancellation, of said conveyance, on account of the fraud practised; and was prosecuting said suit, when he was induced by the fraudulent devices aiid persuasions of Pursley to dismiss it, the latter promising him, that if he would do so, he would secure to him, the collection of one half of-the judgment on Campbell and Cravens. At the- time this promise was made, and the suit dismissed, Pursley knew that the appeal had been decided against him, and the judgment reversed, which he fraudulently concealed from complainant.
To the. present hill Pursley and Lewis were made, defendants which contains a prayer for a cancellation of the deed, made by Bibb, or for a decree against Pursley, for one half of the amount of said judgment, if that should be considered, as more equitable, and for relief generally.
Pursley answered the bill, saying, that he had purchased. the land from complainant and Lewns, at the price named, which he had paid, and obtained the receipt above described. He says that on the purchase aforesaid, they delivered to,him, the title-bond on Bibb, to whom he had applied, and procured the legal conveyance, for said 3U0 acres, which he had lost, and had not been recorded. That sometime thereafter, he had sold the laud to one Foster, who had sold it to a Mrs. Garnett; but in consequence of the loss of the deed, he was unable to convey to Foster; and had mentioned these circumstances to Anderson, wrho promised to call ón Bibb, and procure him, to make a second conveyance to him, or Mrs. Garnett. That he, Pursley, then addressed a written order to Bibb, to execute a deed to *261 said Garnett, which Anderson prosecuted and procured the deed to her, in pursuance of this order. He insists, that when he purchased the land, he gave to Lewis and the complainant, all the information, which he possessed respecting said judgment; and they consented to take it, without recourse on him, and the assignment to them, was made in pursuance of the contract. He denies, that he, at any lime, made a promise to lie liable for any part of it.
The bill was taken as confessed against Lewis. Anderson then filed an amended bill, alleging that Pursley had, in his possession, a written release executed to him by Lewis, intended to exonerate him, from all responsibility, respecting the judgment, ruid required its production.
Pursley again answered, saying, that on the day, on which Anderson and Lewis had executed the receipt, mentioned, in his former answer, he had transferred the judgment to Lewis alone, that being, as lie thought, according to the undertaking between the complainant and Lewis, lie refers to the mistake, which lie says, he had been led into, in his former answer upon this point, by the fact,.that the receipt had been executed to, him, by both of them. He acknowledges thai a release was executed to him by Lewis; says that it and the receipt were prepared, and handed to Lewis-for his signature; and to procure the complainant’s also; hut they were returned to him on the day of the contract, the. receipt with the signature of each; the release with {hat of Lewis only, the receipt, release and assignment of judgment hearing the same date. He says that Anderson was privy to most of the contracts, and insists that if injured, his remedy -was exclusively at laiv. The. release was exhibited with his answer, and is in the following -words.
“Whereas,- John Pursley has by his instrument of Writing of this date, transferred to me the benefit of a judgment, in the Christian circuit court, in ihc name of William Hopson, for his, said Pursley’s use, against Nehemiah -Cravens and Benjamin P. Campbell, without any- recourse on him, the said Pursley, as will more fully appear by the said assignment; but in order to satisfy the said Pursley', and keep him harmless, I do hereby^ bind myself, inv heirs, &c. in ibe penalty of three thou-. *262 sand dollars, current money of Kentucky, never to call on the said Pursley; or be the cause of any other person doing so, for any part of the said judgment, should we be unable, ever to get the same, or any part thereof; but I take the benefit thereof, from him, at my own risk, and am not to look to him, in any manner or way whatever, for the same, witness my hand, this 10th day of ¡September, 1817, in Hopkinsville, Kentucky.
H. K. LEWIS.7
He makes his answer a cross bill against complainant .and Lewis; calls upon them to answer, and say whether they did not agree to take the judgment aforesaid, vidthout recourse on him? Whether they did not cause Bibb to convey the 300 acres to Mrs. Garnett? Whether Anderson did not agree, that the assignment might be made to Lewis alone? and if he did not agree, to execute the release? and if he did not know, previous to the execution of the release, that the assignment was to be'made without recourse on the assignor?
Anderson’s answer, to this cross bill, Is to a considerable extent, a repetition of the statements, in his original bill. He says that he executed the receipt, under the circumstances stated in his bill; and under a belief, from the assurances of Lewis, that Pursley‘was to be bound for the judgment, if it could not be collected; that he did not agree to take it, in any other way; that on the day he executed the receipt, he did not speak to Pursley, nor for several days before and after that time. He insists that upon an inspection of the release, it appears to have been prepared for two to sign, but had been altered. He urges, as in his bill, that Pursley had agreed to be bound to him, for half of the judgment; and denies that he caused Bibb to make a deed to Mrs. Garnett;'but admits, he was present when Mrs. Gar-nett’s agent applied for a deed, and that he might have observed, the old deed, under the circumstances of the case, never could come against Bibb. He says, he considered it as a matter of very little consequence, who should obtain a deed, as he was advised by his lawyer, that his recourse was upon Pursley only, and that he could not in any manner, reach the land. He denies that he had at any time consented for the transfer to be made to-Lewis alone; and says that he did not know, until some time after the execution of the receipt, that the judgment had been assigned in that wav.
*263 Pursley died, and the suit was revived against his ex-écuírix.
, The only depositions taken, were Bibb’s and Lewis’s.'
Lewis states that he took the transfer of the judgment to himself, without Anderson’s consent or knowledge, who did. not know of his intention to make the contract, until he had made it. Anderson did not consent to it; but positively refused to ratify it, unless Purs-ley would assign the judgment, in such a manner, as to' be bound to him, for half of it, and that he, the deponent, would not have made the contract, had he not been induced to do so, by Pursley’s false statements, that his lawyers, Messrs. Patton and Crittenden, had told him, the judgment would certainly be affirmed.
Bibb, in his deposition, stales, that his bond'for the 400 acres of land, was presented to him by Lewis, with a request to convey 300 acres to Pursley, which he refused, because Anderson had not assigned it. Lewis réplied, that Anderson desired the conveyance to be so made; that the application was made by his approbation. Not doubting the veracity of Lewis, he complied with the request, and took up his bond. This was in September, 1817. Soon afterwards, Anderson sued him, in chancery. In 1818, the said suit was dismissed, and understanding that the whole dispute was settled, upon Pursley’s order, he madé the deed to Mrs. Garnett. Pie does not say, that Anderson told him the matter was settled; or that he directed the deed to be made to her; but that the agent of Garnett applied for the deed; Anderson was in company; and when depopent objected to making a second deed, for the same land, Anderson replied, he need not apprehend any danger from the former deed. Complainant also, said at the same time that Pursley and Lewis had cheated him ,out of several hundred dollars.
On the hearing of the cause, the circuit court entered a decree dismissing the bill of the complainant, with costs, absolutely, and he has prosecuted this writ of error, to reverse it.
That a fraud was committed to the injury of Ander- < son, by the combined efforts of the defendants, cannot be reasonably doubted. Lewis’s deposition shows that the complainant refused to ratify the contract, in the *264 form, in which it bad been entered into, by him ant' Pursley; and it satisfactorily appears, that Bibb was deceived ; and by the false representions of Lewis, had - been induced to maleo a conveyance of the land to Purs-ley. The testimony of a man, who has been a principal actor, in the perpetration of a fraud, is, it must be. admitted, entitled to very little consideration. But there is no necessity of relying on his statements for its establishment. The answers of Pursley and Bibb’s deposition, are sufficient for that purpose. lie, Parsley, does not pretend that the bond on Bibb, had been assigned to him by Anderson. The complainant expressly alleges, that lie refused to assign it, even after the execution of the receipt for $1800, unless Pursley would bind himself by an assignment of the judgment; and that Lewis, who had the bond in his possession, delivered it to Pursley, the latter part of whichstatementis not denied;
If the complainant had consented to the delivery cf the bond, why had he not assigned it? Or why at least, was not some testimony preserved, to show his willingness for Bibb to make the deed. The 300 acres were estimated by the parties at $ 1800. It is not said, to have been too high a price; and is it probable that Anderson would have sold the land, at a fair price, and been willing to risk the collection of about one half of it, upon . the double contingency of the confirmation of a judgment, which had been appealed from; and the ability of the defendants there in, to discharge it, if confirmed. Pursley docs not deny, that he informed the complainant, his lawyers had said he would certainly succeed in the appeal referred to; nor that his lawyers said, they had advanced to him an entirely different opinion.
As to this allegation, and that also, in which he id charged with having told the complainant, his only objection to making the assignment, so as to he responsible, was a solemn promise never to assign in that way. he is entirely silent. The danger however, which h<. apprehended, from binding himself, is manifested, not only by the manner in which he made it; but still more, by the release. It was not sufficient, that the judgment had been assigned without recourse, hut in order to satisfy said Pursley and keep him harmless, Lewis bin Is himself, in the penalty of $3000, never to call on him, or be the means of any other person doing so,” &x,
*265 , lu his first answer, he sajs, he paid the., price agreed upon and made the assignment to complainant. and Lewis; in his second, he acknowledges it was made to Lewis only; and the release proves the same.
He was present with Lewis, when Bibb executed the deed to him and heard without contradiction, Lewis’s false statements, as to Anderson’s willingness, that the deed should be so made; and thereby aided, in the imposition, for it is clear, that hedcnew theyWvere false.
The fraudulent intention of the transfer to Lewis alone, js palpable. Anderson had .refused to ratify the contract, and it became necessary to offer a. sufficient inducement to Lewis, to procure his aid in deceiving Bibb, That the complainant, was himself highly censurable, for his great carelessness and indiscretion; (to say the least of his conduct,) cannot be denied. , He had instituted his suit to procure., a cancellation ..of the convey-anee to Pursley, who had not, we-presume, conveyed to any one else.
- It is not necessary, now to say, whether he was not mistaken in supposing that the land wras beyond his reach. But defrauded, and deceived as.he had been, he again reposed confidence in the statements of the man, whom he had so lately, detected in fraud; and seduced by his-deceitful pretences, abandoned his suit, and all hopes of recovering his land. His statement on this point, presents strong marks of improbability, and requires satis-, factory evidence, to elicit credence. Yet, from the bills and- answers, and proof in. the cause, we cannot reasonably doubt it, the complninant expressly charges-that the promise to secure to him the collection of half the judgment was made, and that at the time of making said promise, Pursley knew, the judgment had been reversed. He does not deny that he induced the complainant to dismiss his suit, or that he, was then ignorant of the reversal of the judment; but insists that the remedy is at law.
. Whether that defence Can avail him, is the only point which remains to be considered.
, It is not necessary to determine whether Anderson could have recovered at law, for the fraud practised in, inducing him to dismiss his suit; oribr a violation of *266 the alleged promise; even if he could have proved it, which we presume, is not probable, as Pursley denies that he made such premise, and no proof was introduced in support of it. Be that, as it may, it cannot deprive the complainant of any remedy in chancery, which existed, previous to the last fraud. If A has been defrauded by B, who promises to indemnify him, for the injury sustained, the right of Á, to maintain his action, upon such promise, would not deprive him of any remedy, which previousljq he might have been entitled io in chancery. Surely then, a subsequent fraud cannot be successfully relied on in bar of a decree for redress, against a previous fraud.
A has been defrauded by B, who promises to indemnify him; the right of A to maintain an action on the promise of indemnity, will not deprive him of any remedy, to which he was previously:en-titiéd to, in chancery. Subsequent fraud is no bar to a decree for redress against a previous fraud.
The true question then, in relation.to jurisdiction, in this case, is, not whether a court of chancery is the proper tribunal to apply to, for the parpóse ¿f appertaining damages only, (for it certainly is not) but may not such court entertain jurisdiction, to decree a cancellation of the deed from Bibb? Upon a proper case made out, that would not be doubted.
If the legal title remained in Parsley’s heirs and no one else had claimed the land, except them and the complainant, the proof would have justified a decree in favor of the latter, for his interest in the land itself; and the heirs should have been compelled to convey to him. But it appeared that Mrs. Garnett claimed to hold the legal title, under the deed from Bibb, although he, it seems, had previously conveyed to Pursley. Before any decree affecting the land, could he properly éntered,she and the heirs of Pursley would have been necessary parties. We áre inclined to the opinion, that Foster also should he made a defendant.
. If, when those parlies are brought before the court, the proof justifies a decree reaching the land, it should he made. If Mrs. Garnett’s claim, shall appear tó he such, as ought, under all the circumstances of the case, to he protected in a court of equity, it will be proper to decree, in favor of .Anderson, (unless the aspect of the case upon its merits shall he hereafter materially changed) for one half of the amount of the judgmentin the hill mentioned, and interest thereon against Pursley’s Representatives.'
Denny, for plaintiff; Critttendcn, for defendant.
The decree of the circuit court must be reversed, and the cause remanded to that court, with directions to permit the plaintiff in error, to amend his bill,.and the proper parties before the court, and thereupon, that such further proceedings be had, not inconsistent with this opinion, as may be proper to attain justice.
If no such application be made, upon reasonable tims allowed for that purpose, the bill must be dismissed without prejudice to the rights of the complainant.